FILED

2010 Aug-30  PM 02:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JO LYNN HOLCOMB, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **Case No. 5:09-CV-01703-RDP** |
| | } | |
| MICHAEL J. ASTRUE, | } | |
| Commissioner, Social Security | } | |
| Administration, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Jo Lynn Holcomb brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 405(g). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.       Proceedings Below

Plaintiff originally filed an application for disability on May 4, 2005. (Tr. 53-54). However, that claim was dismissed by Administrative Law Judge ("ALJ") Jerry M. Vanderhoef because the appeal of the initial decision was not filed in a timely manner. (Tr. 57-58). Plaintiff re-filed her application for DIB on August 10, 2006, alleging a disability onset date of April 10, 2004. (Tr. 59-60, 93). This application was denied on November 11, 2006. (Tr. 61-65). Plaintiff then requested a hearing before an ALJ on November 30, 2006. (Tr. 66). Plaintiff received a hearing before ALJ Patrick R. Digby on November 18, 2008. (Tr. 30). In his February 10, 2009 decision, the ALJ

determined that Plaintiff suffers from severe impairments of degenerative disc disease with a herniated nucleus pulpous, obesity,[1] and anxiety with panic, but is not eligible for DIB because her impairments (separately or in combination) do not meet or medically equal any of the impairments listed in the Act. (Tr. 11). After considering the entire record, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a). (Tr. 11-17). As a result, the ALJ held that Plaintiff is not capable of performing her past relevant work as a trimmer, boarder, or boxer for a sock manufacturer, but is capable of performing a job as an inspector, table worker, or an order clerk. (Tr. 17-18). Plaintiff sought review of the ALJ's decision on February 18, 2009. Plaintiff's request for review was denied on June 26, 2009. (Tr. 1-3, 80-83). Therefore, the denial of benefits became the final decision of the Commissioner, and thus, a proper subject of this court's review.

## II.    Facts

Plaintiff was born on July 24, 1961, making her forty-seven years old at the time of the hearing. Plaintiff completed school through the twelfth grade, and received two years of trade school experience while in school. (Tr. 34-35, 101, 151). Plaintiff was previously employed by a sock manufacturing company for ten years as a boxer. (Tr. 103). Plaintiff alleges that she has been unable to engage in substantial gainful activity since April 10, 2004, due to pain in her back and leg, asthma, back and hip arthritis, acid reflux disease, slow learner disorder, and panic attacks. (Tr. 93, 95).

---

[1] The record contains only one instance where Plaintiff was seen by a physician concerning her weight. (Tr. 415).

2

Prior to Plaintiff's alleged onset date of disability, she saw a variety of doctors to treat various symptoms of the conditions from which she suffers.  (Tr. 164-381, 412-36).  On November 10, 2001, Plaintiff began seeing Dr. Frederico Y. Fernandez for a battery of ailments including back pain, depression/anxiety, acid reflux, and asthma.  (Tr. 188-224).  As far as Plaintiff's depression/anxiety, acid reflux, and asthma are concerned, the records during that time frame do not indicate that she received anything more than conservative treatment, which included prescription medications such as Zantac, Albueterol, Prozac, and Zoloft.  (Tr. 194, 201, 207, 209, 213, 218).

Plaintiff's chief complaints about chronic back pain that radiated into her hips and legs were from February 26, 2004 through August 4, 2004, when she presented to Dr.'s William C. Woodall III, Gilles Bastille, Frederico Y. Fernandez,[2] and other doctors with Dekalb Baptist Medical Center ("DMC").  (Tr. 165-257).  During that same time period, Plaintiff fell in her bath tub, hitting the left side of her body underneath her left arm.  (Tr. 227-35).  The records show that Plaintiff went to the emergency room on April 2, 2004 due to the pain she was experiencing from the fall, but her X-rays were normal.  (Tr. 233).

On April 23, 2004, Plaintiff and her husband were hit from behind in a traffic accident.  (Tr. 236-45).  The ambulance report indicates that Plaintiff had an asthma attack at the scene, but she used her own inhaler to control the attack.  (Tr. 241).  Plaintiff complained of back and rib pain. (*Id.*).  X-rays were conducted, and Dr. Gerald T. Cochran[3] opined that Plaintiff had a normal lumbar spine and a normal hip.  (Tr. 242).  On April 27, 2004, Dr. Bastille ordered an MRI of Plaintiff's

---

[2]  Plaintiff had seen Dr. Fernandez in the past for various reasons, but back pain was not one of Plaintiff's complaints until February 26, 2004.  (Tr. 187-224).

[3]  Dr. Cochran was the physician who interpreted the X-ray and MRI results.  (Tr. 242-44).

lumbar spine, but Dr. Cochran again observed that Plaintiff had a normal MRI of the lumbar spine. (Tr. 246).

A month later, on May 27, 2004, Dr. Bart M. Bailey of DMC commented that Plaintiff had a herniated disc in her lower back. (Tr. 247). The next day, Plaintiff was given an epidural steroid block for her back pain by Dr. Preston Todd Sparkman of DMC. (Tr. 249). On June 23, 2004, Plaintiff received another epidural steroid block for lower back pain from Dr. Bailey of DMC, and she received a third one on July 19, 2004. (Tr. 252-53, 256-57). However, Plaintiff reported she did not receive any significant relief. (Tr. 175, 290). Consequently, Plaintiff underwent surgery on her lower back on August 4, 2004. (Tr. 173-77). Fifteen days after the surgery, Plaintiff reported to Dr. Woodall claiming that her pain was increasing and continuing to radiate into her right hip. (Tr. 181, 258-63). In an unrelated visit on October 28, 2004, Plaintiff informed Dr. Fernandez that the surgery did not provide her with any relief because she was still experiencing pain with radiation. (Tr. 191). On November 11, 2004, Plaintiff underwent surgery on her lower back again. (Tr. 181-82). After this surgery, Plaintiff reported some back soreness, but no leg pain. (*Id.*).

From September 2004 through December 2004, Plaintiff continued to see the doctors at DMC with her chief complaint being back pain. (Tr. 264-87). On September 10, 2004, Plaintiff received an epidural steroid block after complaining of back pain. (Tr. 266-67). On September 27, 2004 and October 18, 2004, Plaintiff received additional epidural steroid blocks for back pain. (Tr. 270-71, 274-75). On November 30, 2004, Plaintiff reported to Dr. Fernandez that she had back surgery a few weeks ago and was doing well. (Tr. 283-84). No mention of radiating back pain was noted by Dr. Fernandez at that visit. (*Id.*). On January 18, 2005, Plaintiff returned to see Dr. Bastille for pain. (Tr. 288). Dr. Bastille indicated that Plaintiff had some back soreness, but her leg still

remained her main trouble.  (*Id.*).  At that visit, Dr. Bastille again explained to Plaintiff that her soreness and pain hopefully represented a sign of healing in the nerve root that would resolve with time and he would see her in six weeks.  (*Id.*).

On August 5, 2005, Plaintiff was seen by Dr. Snehaprabha Reddy for a disability examination for her initial application.  (Tr. 291-98).  Dr. Reddy opined that Plaintiff suffered from degenerative disc disease, bronchial asthma, and depression.  (Tr. 292).  Dr. Reddy indicated that Plaintiff's range of movement was at its worst (50%) when she rotated her dorsolumbar spine to the left or right.  (Tr. 293).  However, under "Flexion," Dr. Reddy found that Plaintiff scored eighty out of a possible ninety.  (*Id.*).  Additionally, for "Extension," "Right Lateral Flexion," and "Left Lateral Flexion," Dr. Reddy wrote that Plaintiff scored a fifteen out of a possible twenty-five.  (*Id.*).

Plaintiff saw Dr. Mary Arnold for a psychological evaluation on August 11, 2005 for her initial application.  (Tr. 299-302).  During this examination, Dr. Arnold found Plaintiff's mental status better than expected, given her history of special education.  Dr. Arnold indicated that Plaintiff was able to successfully complete a battery of tests.  (Tr. 300).  Specifically, Plaintiff was accurately able to multiply and subtract sums of money, count backward from twenty, recite serial sevens, name the months of the year in sequence and in reverse, recall two out of three objects after a five minute delay, name the current and former Presidents of the United States, was familiar with September 11th and the Iraq War, name the Governor and capital city of Alabama, and could identify Martin Luther King Jr., Abraham Lincoln, and Christopher Columbus.[4]  (*Id.*).  Further, Dr. Arnold opined

_____

[4]  Plaintiff successfully completed other tasks as well.  (Tr. 300).  Plaintiff could name the seasons and state the direction in which the sun rises.  (*Id.*).  She could name two oceans and was aware of the Indian Ocean disaster.  (*Id.*).  Plaintiff was also aware of a space shuttle flight that had taken place around the time of the examination.  (*Id.*).  In the Abstract Reasoning section of the evaluation, Plaintiff was able to correctly describe the similarity between table/chair, piano/drum,

that Plaintiff's responses were in the usual range, and estimated that her Full Scale Intelligence Quotient ("FSIQ") was in the borderline to low average range.[5]  (Tr. 300-01).  In conclusion, Dr. Arnold found Plaintiff to be a compliant and reliable informant.  (Tr. 302).

On September 15, 2005, Plaintiff underwent a physical RFC assessment to supplement her initial application for disability.  (Tr. 304-11).  Her primary and secondary diagnosis were listed as degenerative disc disease and asthma.  (Tr. 304).  Plaintiff was found to have some postural limitations, but most were limited as occurring "[o]ccassionally."[6]  (Tr. 306).  Additionally, Plaintiff was found to have environmental limitations:  avoid concentrated exposure to extreme cold, extreme heat and vibrations, but was not found to have any manipulative limitations, visual limitations, or communicative limitations.  (Tr. 307-08).  Plaintiff was instructed to avoid all exposure to hazards such as dangerous machinery and unprotected heights.  (Tr. 308).  As to credibility, it was found that Plaintiff "could reasonably produce some of her stated symptoms."  (Tr. 309).  The medical consultant noted that Plaintiff's statements about her symptoms and functional limitations were only partially credible because the alleged severity was not totally consistent with the objective findings from the evidence in her file.  (*Id.*).

_____

and painting/statute.  (*Id.*).  In the Judgment section of the evaluation, Dr. Arnold noted that Plaintiff would call "911" in the case of an emergency, and if lost in the woods, she would look at the position of the sun to get a sense of direction.  (Tr. 301).

[5]  No formal testing was conducted as to Plaintiff's FSIQ at this visit.  (Tr. 301).

[6]  Postural limitations showed that Plaintiff could frequently climb ramps and stairs, but occasionally balance, stoop, kneel, crouch, and crawl.  (Tr. 306).  Plaintiff was found to never be able to climb ladders, ropes, or scaffolds.  (*Id.*).

On September 15, 2005, Plaintiff had a psychiatric review conducted by Dr. Dale Leonard.[7] (Tr. 312-25).  He opined that Plaintiff did have an affective disorder.  (Tr. 312).  However, Dr. Leonard found that Plaintiff's symptoms do not reflect mental slowness.  (Tr. 313).  He also noted that Plaintiff reads, drives and shops, but is unable to care for her personal needs.  (Tr. 313, 324). Further, Dr. Leonard reported that Plaintiff shops and visits friends once a week, as well as goes to church every other week.  (Tr. 324).  In his observation, Dr. Leonard found Plaintiff to have appropriate judgment and his diagnostic impression was that Plaintiff did have an adjustment disorder.  (*Id.*).  Thus, he gave Plaintiff a GAF score of 59.  (*Id.*).  Nonetheless, he also found Plaintiff's claims about symptoms and functional limitations partially credible and not totally consistent with the objective findings from the evidence in her file.  (*Id.*).

Dr. Leonard also completed a mental RFC assessment on September 15, 2005 for Plaintiff's initial request for disability.  (Tr. 327-29).  There, Dr. Leonard noted that Plaintiff did possess some moderate limitations when it came to following detailed instructions and maintaining attention and concentration for extended periods of time.  (Tr. 327).  He also found some moderate limitations as to Plaintiff's ability to complete a normal workday and workweek without interruption from psychologically based symptoms; her ability to interact with the general public; her ability to accept instructions and respond to criticism from supervisors; and her ability to respond appropriately to changes in a work environment.  (Tr. 328).  In summary, Dr. Leonard opined that Plaintiff was capable of completing an eight-hour workday.  Further, he found that she possessed the capacity to set ordinary daily goals, but may need assistance with complex goals or planning.  (Tr. 329).

---

[7]  This document does appear to have a typo on the last page.  (Tr. 324).  Dr. Leonard indicated on the first page that he was evaluating Jo Lynn Holcomb, but on the last page he refers to her using masculine pronouns.  (Tr. 312, 324).

On January 19, 2006, Dr. Muhammad E. Ata examined Plaintiff after she presented with complaints of lower back pain. (Tr. 369). The record from that visit indicates that Plaintiff's pain is the result of a fall from two weeks prior. (*Id.*). Dr. Ata reviewed Plaintiff's X-ray, noting the X-ray showed old surgical changes in her L-spine, but that her lumbar pain was secondary to the fall. (*Id.*). Dr. Ata instructed Plaintiff to return to his office in ten days if her pain did not improve, yet there is no evidence in the record that Plaintiff returned within ten days. (Tr. 367-73). In fact, her next visit to Dr. Ata's office was not until July 5, 2006, and complaints of back pain were not mentioned. (Tr. 368).

On March 3, 2006, Plaintiff presented to Dr. Woodall with complaints of back pain radiating into her right leg. (Tr. 352). A CT of Plaintiff's lumbar spine was conducted and the interpreting physician, Dr. Colin Carter Stewart, found a small left-sided disc herniation at L5-S1, and postsurgical hemilaminectomy of the right with soft tissue seen within the right lateral recess, which Dr. Stewart suspected was scar tissue. (Tr. 353-54). A myelogram[8] of the lumbar area was also conducted. (Tr. 355-56). Again with Dr. Stewart reviewing, the myelogram revealed a left-sided herniation. (Tr. 355). The right side appeared normal even though Plaintiff made claims of right leg pain. (*Id.*).

As a result of the herniated disc, Plaintiff underwent a third surgery on her back on March 28, 2006. (Tr. 339-45). After reviewing Plaintiff's previous MRI scan and myelogram, Dr. Woodall opined that Plaintiff's lumbar spine showed disc space narrowing and forminal stenosis bilaterally. (Tr. 343). The operative report indicated a successful surgery with no complications. (Tr. 344-45).

---

[8] A myelogram is where a die-like fluid is injected into the spinal area to make pictures of the bones and fluid filled spaces more visible in an X-ray. WebMD, http//:www.webmd.com/back-pain/myelogram-16147.html (last visited July 1, 2010).

Plaintiff was discharged on March 31, 2006 and given Percocet for pain. (Tr. 340-41). On May 4, 2006, Plaintiff returned to Dr. Woodall for a post-operative visit. (Tr. 364). Dr. Woodall documented that Plaintiff was doing better, and that she had *excellent relief* of her right sciatica. (Tr. 364 (emphasis added)). Dr. Woodall wrote that Plaintiff was making good progress, and that she was to return in six weeks. (Tr. 364). On June 29, 2006, Plaintiff reported back to Dr. Woodall as instructed. (Tr. 363). Dr. Woodall opined that Plaintiff was doing "quite well." (*Id.*). He documented that Plaintiff made no significant pain complaints at this time. (*Id.*). Dr. Woodall even included that Plaintiff was "happy with the results," and that she did not have to use any pain medications. (*Id.*).

Later, on October 24, 2006, in light of the significant progress and success Plaintiff had with her third back surgery, she seemed to be doing unusually poorly when examined by Dr. Jon G. Rogers for a second psychological evaluation for her second application for disability. (Tr. 374-80). Plaintiff reported that she did not want to go to work because she could not get her job right and has been hospitalized twice for her illness. (Tr. 374). Additionally, she reported pain levels of seven out of ten in her back. (Tr. 375). Moreover, she indicated that she had few friends that she visited, and she has been admitted to the emergency room twice in the past[9] for depression/anxiety problems. (Tr. 374-75). Dr. Rogers noted that Plaintiff seemed depressed and that her speech was spontaneous. (Tr. 376). He also noted that she was unable to perform serial sevens; could not spell "world" backward; could not name the President but could identify the capitol; could not name the Governor

---

[9] In review of the record, there is not an admittance record regarding Plaintiff's claims to Dr. Leonard about being admitted to the hospital for panic, depression, or anxiety. Additionally, the only record that resembles what Plaintiff alleges is when she went to Northeast Alabama Health Services with complaints about suffering from symptoms associated with depression and anxiety, but that visit is subsequent to this visit. (Tr. 413-14).

or capitol of Alabama; she did not know the number of weeks in a year; and she could not interpret any proverbs. (Tr. 376-77). However, Plaintiff answered two out of three math problems correctly; could recall three objects after five minutes; could correctly repeat four digits forward and three digits backward; recognized the similarity among all three pairs presented to her; and could recall family members' birthdays, as well as her age when she graduated high school. (Tr. 376-77). Dr. Rogers opined that Plaintiff had low functioning and was probably retarded, but found that she was able to function independently. (Tr. 378). Dr. Rogers assigned her a GAF score of 50. (*Id.*). Upon a request from Disability Determination Services, Dr. Rogers stated that Plaintiff's ability to understand, remember, and carry out instructions would be moderately impaired, and her ability to respond to co-workers and supervisors in a work setting would be severely impaired. (Tr. 380).

On September 9, 2006, Plaintiff presented to Dr. Eugene E. Fleece for another psychological evaluation. (Tr. 382-95). Dr. Fleece indicated that Plaintiff suffers from affective disorders as well as anxiety disorders. (Tr. 382). Under "Affective Disorders," Dr. Fleece marked that Plaintiff had an affective disorder because she suffered from sleep disturbance, psychomotor agitation or retardation, and difficulty concentrating or thinking. (Tr. 385). However, the form required four sections to be marked, and since Dr. Fleece only noted three, he explained that Plaintiff was not on a definite schedule with the criteria for a marked affective disorder. (*Id.*). Under the section for "Mental Retardation," Dr. Fleece stated that there were "no signs of low est. of longitudinal functioning" anywhere in the file. (Tr. 386). As far as the anxiety disorder was concerned, Dr. Fleece noted anxiety, panic, and pain. (Tr. 387). For functional limitations, Dr. Fleece indicated that Plaintiff was moderately limited, but there were no episodes of decompensation. (Tr. 392). Dr. Fleece opined that the extent of Plaintiff's mental impairment is severe, but he did explain that the

10

severity was somewhat limited.  (Tr. 394).  He found that in cognitive areas Plaintiff's limitation was moderate, but in social or workplace venues her limitation was severe.  (*Id.*).

In addition to the psychological evaluation, Dr. Fleece completed a Mental RFC assessment on Plaintiff.  (Tr. 396-99).  That report was very similar to the Mental RFC conducted a year earlier by Dr. Leonard.  (Tr. 327-29, 396-99).  The only differences between the two are that Dr. Fleece found Plaintiff to be "Moderately Limited" in sections eighteen and nineteen in the "Adaptation" category, where as Dr. Leonard found Plaintiff "Not Significantly Limited."  (Tr. 328, 397).  Even though Dr. Fleece determined that Plaintiff was severely limited in social and workplace settings, he wrote in Plaintiff's Mental RFC that she "could make an 8 hour workday."  (Tr. 398).  Moreover, Dr. Fleece stated that Plaintiff "could remain within competitive limits on psych grounds alone." (*Id.*).  Furthermore, Dr. Fleece opined that Plaintiff would show signs of "irritable distractibility" if asked to work closely with others, "but effect would *fade with exposure*."  (*Id.*) (emphasis added).

On November 13, 2006, Plaintiff had another Physical RFC assessment.  (Tr. 400-07).  In this assessment, Plaintiff's primary diagnosis was listed as herniated nucleus pulposus, and her secondary diagnosis was other alleged impairments.  (Tr. 400).  Under "Exertional Limitations," Plaintiff was found to be able to lift ten pounds occasionally, as well as frequently.  (Tr. 401).  In the other areas listed under that category, Plaintiff's limitations were the same as her previous physical RFC.  (Tr. 305, 401).  In the "Postural Limitations" category, the only difference is that this time Plaintiff was found occasionally capable of climbing ramps or stairs.  (Tr. 306, 402).  As for "Manipulative Limitations," "Visual Limitations," and "Communicative Limitations," the findings remained the same.  (Tr. 307-08, 403-04).  However, under "Environmental Limitations," the only difference was that now, Plaintiff was not to avoid all exposure; instead, the suggestion was made

11

to avoid concentrated exposure. (Tr. 308, 404). In conclusion, the examiner noted, Plaintiff's claims about her conditions are partially supported by the medical record. (Tr. 405).

On January 11, 2007, Plaintiff returned to see Dr. Woodall with continued complaints of back pain radiating into her left leg. (Tr. 419-20). Dr. Woodall documented that Plaintiff's pain in her right leg has "resolved fairly well." (Tr. 419). Since her pain complaints seemed a "little worse," Dr. Woodall found it appropriate to have an X-ray and an MRI conducted on Plaintiff's lumbar spine. (*Id.*). The X-ray was conducted that day and the interpreting physician, Dr. Bibb Allen Jr., determined that there was a "satisfactory alignment." (Tr. 422). On February 22, 2007, the MRI was conducted. (Tr. 421). The reviewing physician, Dr. Cecil M. Eiland, opined, there were postsurgical changes at L5-S1, but the other discs were normal. (*Id.*). Additionally, there was no thecal sac nor nerve root compression found. (*Id.*). In Dr. Eiland's impression, there was no spinal nor foraminal stenosis present. (*Id.*). Dr. Woodall reviewed the findings on February 28, 2007. (Tr. 418). He reported that the MRI results did not demonstrate obvious disc rupture or compression. (*Id.*). Additionally, Dr. Woodall indicated that he did not see anything on the left (the side she was complaining of radiating pain). (*Id.*). Dr. Woodall found that Plaintiff had satisfactory surgical result. (*Id.*). In conclusion, Dr. Woodall noted that if Plaintiff's pain persists, he would give her an epidural steroid block, and that he would continue to see her as needed. (*Id.*).

On May 29, 2007, Plaintiff returned to Dr. Ata with complaints concerning cough and congestion along with continued back pain. (Tr. 427). However, no determination was made about back pain beyond Plaintiff's complaints, but Feldene and Darvocet were prescribed for pain. (*Id.*). Again, on July 5, 2007, Plaintiff presented to Dr. Ata with complaints of back, hip, and leg pain. (Tr. 426). However, as was done before, no more than pain medication was prescribed. (*Id.*). On

12

October 26, 2007, the pattern repeated itself. (Tr. 425). Plaintiff went to Dr. Ata for a piece of glass in her foot, but continued to complain of back pain as well. (*Id.*). Still, nothing more than pain medication was prescribed. (*Id.*).

## III.    ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past

13

employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." (*Id.*).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 10, 2006, her alleged onset date of disability. (Tr. 11). The ALJ determined that Plaintiff has severe impairments of degenerative disc disease with a herniated nucleus pulposus, obesity, and anxiety with panic. (*Id.*). However, the ALJ stated that there was no evidence showing Plaintiff's "severe obesity" resulted in any limitations upon her life. (*Id.*). Further, the ALJ found that Plaintiff does not have impairments or combinations thereof, that meet or medically equal the criteria of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 of the Guidelines. (*Id.*). After considering the record as a whole, the ALJ determined that Plaintiff was capable of performing sedentary work as defined in 20 C.F.R. 404.1567(a). (Tr. 11-17).

The ALJ took into consideration Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist that Plaintiff can perform. (Tr. 17-18). The ALJ called a vocational expert ("VE"), who was present throughout the hearing and familiar with Plaintiff's background, to testify about Plaintiff's non-exertional limitations. (Tr. 17-18, 32-52). The VE testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 50). Based upon Plaintiff's individual characteristics, RFC, the testimony of the VE, and the Medical Vocational Guidelines, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that she was not under a disability from her onset date of disability through the date of his decision. (Tr. 18).

## IV.  Plaintiff's Arguments for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed, or in the alternative, remanded for further consideration.  (Doc. # 10 at 9-10).  Plaintiff asserts that there are three reasons[10] why this court should grant relief sought: (1) the ALJ did not properly evaluate her pain consistent with the Eleventh Circuit pain standard; (2) the ALJ failed to properly apply the Eleventh Circuit pain standard; and (3) the ALJ failed to fully and fairly develop the record.  (Doc. #10 at 5, 8, 9).

## V.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a

---

[10]  The third reason is found in the brief, but is presented without argument.  (Tr. 9).

conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI.   Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.   The ALJ Properly Evaluated Plaintiff's Pain Testimony.

When a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's pain standard for evaluating these symptoms requires: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence that confirms the severity of the alleged pain, or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard does not require objective proof of the pain itself. *Elam v. R.R. Ret. Bd.*, 921 F.2d. 1210, 1215 (11th Cir. 1991). However, the Act and its regulations do require that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the kind of pain alleged; mere allegations of disabling pain are insufficient. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929(b) (2006). Once such a medical condition is identified, a variety of factors are considered in evaluating the intensity and persistence of symptoms, such as pain, which would limit an individual's capacity for work. These include daily activities, type and

16

dosage of medication, treatment history, medical findings, and physicians' opinions. 20 C.F.R. § 416.929(c) (2006).

Under the relevant regulations, the initial inquiry involves whether the condition can cause the kind of pain alleged and does not entail any analysis of the severity, intensity, or persistence of the actual symptoms resulting from the medically documented condition. *See* 20 C.F.R. § 416.929(b) (2006). However, the inquiry does not end with the application of the pain standard. The regulations set forth a secondary inquiry which evaluates the severity, intensity, and persistence of the pain and symptoms a claimant actually possesses. *See* 20 C.F.R. § 416.929(c)-(d) (2006). Indeed, there is a difference between meeting the judicially created pain standard and *having disabling* pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (holding that the Secretary must consider a claimant's subjective testimony of pain if the pain standard is met).

As the Eleventh Circuit has stated, "[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Talbot v. Comm'r of Soc. Sec.*, No. 09-14795, 2010 WL 2428728, at *2 (11th Cir. June 16, 2010); *see also Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992). After considering a claimant's complaints of pain, an ALJ "may reject them as not creditable." *Marbury*, 957 F.2d at 839. When the ALJ makes a clear and articulated decision, those findings will not be overturned by a reviewing court if substantial evidence exists to support that determination. *Talbot*, 2010 WL 2428728, at *2; *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11 Cir. 1995).

17

The nature of a claimant's symptoms, the effectiveness of medication, the claimant's activities, and other factors are relevant in the consideration of subjective symptoms such as pain. *See* 20 C.F.R. §§ 404.1529(c)(3); 416.929 (c)(3) (2005); *Marcia v. Bowen*, 829 F.2d 1009 (11th Cir. 1987).   Specifically, the ALJ considered Plaintiff's success with pain relief after her third surgery. (Tr. 15).   He also relied upon her treating physicians' opinions and notes where no opinions were given about Plaintiff's physical limitations.  (Tr. 16).   Moreover, the ALJ gave weight to Plaintiff's refusal to quit smoking.   (Tr.13-16).   In sum, the ALJ found that Plaintiff's subjective pain complaints were not credible because they were inconsistent with the evidence in the record.  (Tr. 16-17).

Plaintiff's main argument is that the ALJ disregarded the medical evidence, and that her multiple surgeries and continued back pain is enough evidence to consider her as disabled.  (Doc. #10 at 8).  However, there is no indication from any treating physician that Plaintiff is currently limited in any such way that she cannot work. (Tr. 16).  The Eleventh Circuit has concluded that the ALJ's decision to discredit a claimant's subjective pain complaints based upon the fact that no doctor of record opined that she was physically limited was substantial evidence to support the ALJ's determination.  *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).   After her third back surgery, Dr. Woodall noted that Plaintiff was experiencing *excellent relief* and was doing quite well.  (Tr. 15, 363) (emphasis added).   When Plaintiff went to see Dr. Ata instead of Dr. Woodall, only conservative pain treatment was prescribed, and Dr. Ata never did more than order pain medication for Plaintiff.  (Tr. 425-27).  Furthermore, Dr. Woodall conducted MRIs and X-rays earlier that year that revealed no problems that would support Plaintiff's pain complaints.  (Tr. 419-22).  Even the examiners conducting the physical RFC assessments found that Plaintiff could handle an eight hour

18

workday. (Tr. 312-25, 400-07). Therefore, the ALJ's decision to find Plaintiff's subjective pain testimony not credible is supported by substantial evidence.

### B.   The ALJ Properly Applied the Eleventh Circuit Pain Standard.

Although a reversal is warranted if the ALJ's decision contains no indication of the proper application of the three-part pain standard, *Holt v. Sullivan*, 921 F.2d. 1221, 1223 (11th Cir. 1991), the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529 along with a discussion of the evidence demonstrates the proper application of the pain standard. *Wilson*, 284 F.3d at 1225-1226.

In this case, the ALJ found that although part one of the pain standard was met, Plaintiff failed to satisfy both prongs under the second part of the standard because the objective evidence does not confirm either the severity of Plaintiff's alleged symptoms or conditions that could reasonably be expected to give rise to the claims made. (Tr. 12). In support of this finding, the ALJ recounted the facts that: (1) Plaintiff only saw one physician with regard to her weight even though her records are littered with notations that she was obese; (2) she still smokes even though she has asthma and had been instructed to stop; (3) no treating physician made specific claims that she was physically limited from working; (4) two psychologists found she was capable of working an eight hour day; and (5) considering her age, education, work experience, and functional limitations listed in her physical RFC, a VE determined that she was capable of being an inspector, table worker, or an order clerk. (Tr. 12-18). Additionally, the ALJ cited 20 C.F.R. § 404.1529 in his decision, and he discussed his reasons for finding that Plaintiff's allegations of disabling pain and functional limitations were not credible. (Tr. 12-17).

19

Plaintiff contends that the fact that she has had three lumbar surgeries is alone sufficient to substantiate her pain. (Doc. #10 at 9). However, that argument is off the mark because the mere existence of an impairment does not indicate to what extent that impairment undermines a claimant's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Moreover, after her third back surgery, Plaintiff reported to Dr. Woodall that she was "happy with the results," and that "she does not have to use any pain medication at this time." (Tr. 15, 363). Therefore, the ALJ properly applied the Eleventh Circuit pain standard to Plaintiff's claims.

###    C.    The ALJ Fully and Fairly Developed the Record.

Plaintiff makes the argument in her prayer for relief that the ALJ failed to fully and fairly develop the record. (Doc. #10 at 9). However, Plaintiff does not offer any support for her claim. (*Id.*). And, in any event, contrary to her assertion, a review of the ALJ's decision shows that the ALJ properly reported the evidence of record.

The Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial," and that the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). However, an ALJ is not obligated to further develop the record if doing so is unnecessary in order to allow him to make a disability determination. *Outlaw v. Barnhart*, No. 05-15996, 2006 WL 2640223, at *2 (11th Cir. Aug. 10, 2006). Moreover, failure to further develop the record does not constitute reversible error "if the ALJ had sufficient evidence on which to base his decision." *McCloud v. Barnhart*, 166 Fed. App'x 410, 417 (11th Cir. 2006); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). After review of the record, it is clear that the ALJ met his duty to fully and fairly develop the record. (Tr. 11-18).

The Eleventh Circuit recently determined that a claimant must show prejudice before the court will find that an ALJ failed to fully develop the record and thus that a hearing violated the claimant's rights. *Waldrop v. Comm'r of Soc. Sec.*, No. 09-15615, 2010 WL 2017647 at *4 (11th Cir. May 21, 2010).  In explaining this statement, the Eleventh Circuit stated, "[t]his at least requires a showing that the ALJ did not have all the relevant evidence before him in the record ... or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*; *see also Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).  Here, Plaintiff does not offer any basis for saying that she was prejudiced, nor does she suggest that the ALJ failed to consider any of the evidence in the record when he made his decision.  (Doc. #10 at 9).

A review of the record and the ALJ's decision shows that he adequately developed and considered the record.  The ALJ duly noted Plaintiff's testimony about her weight, mental health, back pain, hip pain, leg pain, and asthma.  (Tr. 11-17).  The ALJ's decision referenced the multiple times that Plaintiff went to the doctor as well as the tests and evaluations (mental and physical) that were conducted on her.  (*Id.*).  Additionally, the ALJ considered the three surgeries that Plaintiff had to correct her back problem.  (Tr. 13-16).  Moreover, he also considered the psychological evaluations that were conducted on Plaintiff.  (Tr. 14-15).  Therefore, the ALJ had sufficient evidence on which to base his decision, and he adequately dealt with this evidence in his decision.  In sum, the ALJ's decision made specific reference to multiple exhibits in the record regarding information about the treating physician's opinions, the consulting physicians' opinions, Plaintiff's medications, hospital visits, and medical treatment.

**VII.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is properly supported by substantial evidence and proper legal standards were applied in reaching this determination.  The final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this _____30th_____ day of August, 2010.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE